BOARD OF SUPERVISORS OF JEFFERSON COUNTY VS. FRANK J. ARRGHI.

1. MANDAMUS: *Its requisites.   Practice.*
    The right of the relator, to entitle him to the writ of *mandamus*, must be clear and specific.   In the absence of any denial of the answer, a motion made for the writ is an admission of the truth of the allegations of the answer.

2. SAME: *Answer.   Bar.*
    The answer of respondents, undenied, that a cause was pending involving relator's title to the warrant, is a sufficient bar to the petition invoking the taxing power.

3, SAME: SAME: *Recoupment.*

Where there has been a breach of a contract, it is competent for the board of supervisors to recoup for the damages arising therefrom.

4. BOARD OF SUPERVISORS: *Allowance of claims. Effect thereof.*

The allowance of a claim by the board of supervisors is an ascertainment that the claim is just, and the amount fixed; and if the board fails to provide for the payment of the warrants issued, then a case has arisen for redress by *mandamus*, to enforce the board to make provisions for payment.

5. SAME: *Case in judgment.*

M. contracted with the board of supervisors to build and keep in repair for five years, a bridge; during the time the bridge was destroyed. He and his sureties were insolvent. A warrant was issued to him, and by him transferred. Failure of consideration arose before notice of the assignment. The board refusing to levy a tax to pay the warrant, the assignee applied for a *mandamus*: *Held*, that upon this state of facts the board had a right to recoup for damages arising from a breach of the contract, and the failure of consideration having occurred before notice of assignment, is available against the assignee; and that it is competent for the board to take the initiative by a bill in chancery for a surrender and cancellation of the warrant.

ERROR to the Circuit Court of *Jefferson* County.

Hon. URIAH MILLSAPS, Judge.

The board of supervisors of Jefferson county entered into a contract with Patrick Murphy for the building and maintaining in repair for five years, a bridge. A warrant for the last installment, $2,100, payable in December, 1874, was issued to him and by him indorsed to Frank Arrghi, the relator. This transfer is alleged to have been made in April, 1874. At the July term of the board, the relator asked for the levy of a special tax to pay his warrant, which being denied, he filed his petition for a peremptory *mandamus*. The petition avers that the work was duly performed, and was reported at the July term, 1871, and the claim allowed for $6,100, and warrants issued for the amount. That the one, No. 823, was payable for $2,100, January 1, 1873. That the board had made special levies to pay $4,000.

The board filed a demurrer to the petition, which was overruled and respondents required to answer.

The board, in their answer, set forth that there had occurred a breach of the contract with Murphy; that the bridge had been washed away and that he had failed to repair it; that he and his sureties were insolvent; that a notice by them of these facts had been published, and the public cautioned against purchasing the warrant; all of which occurred before the notice to them of the transfer to the relator. Also, that they had been garnisheed by a judgment creditor of Murphy, and that an issue was then pending, whether the transfer by Murphy to the selator was fraudulent or not. The answer also relies upon the fact that no appeal had been taken by the relator from the action in refusing to levy the tax. The answer is not traversed, but upon motion of the relator, a peremptory writ was awarded. From which ruling an appeal was taken, and this order of the court assigned as error.

*Thomas Reid* and *G. E. Harris*, Attorney General, for plaintiffs in error:

The board of supervisors set up a failure of consideration; that they had been garnisheed, and had set up that defense in the garnishment suit. And the court could not, in that stage of the proceedings, grant a peremptory writ. No issue was made, the case went to hearing on the petition and answer, and the answer must be taken for true, as it is not denied. If anything remains to be done, the writ will not issue. Board of Education *v.* West Point, 50 Miss., 638; Clayton *v.* McWilliams, 49 id., 311; 9 S. & M., 90; 24 Miss., 439. The motion for the peremptory writ admitted the facts set up in the answer, and the writ should not have issued. The title to the warrant which petitioner claims was legally assigned to him, was contested by a proceeding in the chancery of Claiborne county. These facts must be taken as true unless denied or contested. Rev. Code 1871, § 1520.

*Tom. L. Mellon* and *W. L. Nugent*, for defendant in error:

The board of supervisors are the successors of the board of police. Board of police had power to order the issuance of warrants. Carroll *v.* Board Police, 6 Cush., 38. They could not issue warrants, but could order the clerk to issue them. Board

of Police *v.* Grant, 9 S. & M., 77. The order to issue the warrant is a judgment. Arthur *v.* Adam & Speed, 49 Miss., 404. The judgments of the board of police, like those of all other courts, are final and binding until reversed. Yalabusha County *v.* Carbry, 3 S. & M., 529 ; Carroll *v.* Board of Police, 6 Cush., 38. It is incompetent for the board of police, in answer for an application for a *mandamus* to compel them to levy a tax to pay a warrant issued in accordance with their judgment, to set up any defense to the justice of the claim which might have been considered by them in rendering their judgment. Carroll *v.* Board of Police of Tishamingo County, 6 Cush., 38. If their judgment was obtained by fraud, it can only be set aside by proper proceedings therefor. Ross *v.* Lane, 3 S. & M., 695; Beaman *v.* Leake County, 42 Miss., 237. After a claim has been allowed and the issuing of a warrant ordered by the board of supervisors, the board have no authority, at a subsequent meeting, to rescind the order of allowance. Arthur *v.* Adam & Speed, 49 Miss., 404. The board of supervisors exercise both judicial and ministerial functions, and when they have gone forward and performed the judicial act, and the result of such judicial act raises an obligation on them to perform a ministerial act, which they refuse to perform, a *mandamus* is the proper remedy to compel performance on their part; and this may be done, although they may have reconsidered and endeavored to revise and annul such judicial act. Moses on Man., 125. A previous demand to perform this duty is not necessary. Id. ; citing Commonwealth *v.* Commissioners, 37 Penn., 237. *Mandamus* is the only remedy by which to compel the board of police [supervisors] to discharge their duties as public officers in levying the tax required by law to pay the debt of the county. Carroll *v.* Board of Police, 28 Miss., 38 ; Moses on Man., 126–128.

SIMRALL, J., delivered the opinion of the court.

This suit was brought by the relator to compel the board of supervisors of Jefferson county to impose a special tax to pay a warrant drawn by the clerk on the county treasurer, in favor of Pat-

rick Murphy, for $2,100, payable December 1, 1874, and by him indorsed to the relator. This warrant was the last install-ment for the repair of a bridge. A partial payment of $333, or about this sum, had been made to Murphy.

The petition to the board to assess the tax, was presented at the July session, 1874. The date of the assignment of the war-rant to the relator is alleged to have been the 30th of April, 1874.

The answer lies upon the refusal of the board of supervisors to levy the tax, as conclusive against the relator, since said order has not been appealed from, but remains in force.

The second paragraph alleges that on the — day of July, 1874, the board was garnisheed by the judgment debtor of Pat-rick Murphy, and that respondent had answered, denying in-debtedness, because the warrant had been assigned in part and final payment for work done by Murphy in the repair of a cer-tain bridge, which work Murphy warranted, and agreed to repair all damages that may accrue from any defect in workmanship or material, for the term of five years from the time of completion, except wear and tear from crossing, etc., but that there had oc-curred a breach of the engagement in this, that the high water in the creek had washed away part of the support and defenses of the bridge, to the great damage of the county, and that Murphy and his sureties were insolvent, thence there had ensued a failure of consideration. So soon as the failure of consideration had oc-curred, the respondent gave notice in the "Fayette Chronicle" and "Natchez Courier and Democrat," warning the public not to trade for such warrant. In their said answer to said writ, re-spondent admitted notice of the transfer of the warrant, on the — day of July, 1874. An issue was made up by the garnisheeing creditor, Tod Hunter, whether the transfer of this warrant by Patrick Murphy to the relator was *bona fide*, or merely simulated and fraudulent. Said answer also stated that the relator was also garnisheed by said Tod Hunter, in the same suit, and in his an-swer claimed to be *bona fide* owner of said judgment by assign-

ment, and that an issue also made up on his answer was pending and undecided.

The respondent, for further answer, relies upon the breach of the contract hereinbefore set out, in reference to the repair of the bridge and keeping it in repair, and the insolvency of Murphy and his sureties.

The motion for the peremptory writ on the face of the papers assumed that the relator had shown a case for relief, notwithstanding the allegations of the answer. A demurrer was not interposed to test the sufficiency of the return in law, nor was it traversed or otherwise responded to. In this attitude of the pleadings, the answer must be taken as true. The statute intends that the relator who asserts merely a private right shall give the respondent an opportunity to comply before he can institute a suit " by demanding a performance of the act or duty." Code, §§ 15, 17. It was incumbent then on the relator to make the demand alleged to have been made in July, 1874, before he could institute his suit. The refusal of the board does not conclude the relator in any wise, but is made by the statute one of the elements of the plaintiff's right to this remedy.

It has been repeatedly held that the condition and allowance of the claim of a creditor by the board of supervisors, entered upon their records, is a distinct and positive ascertainment that the demand is just and the amount fixed. It becomes certain, positive, and in one sense conclusive, and if the board does not provide the means to pay the warrants upon the county treasurer, issued by the clerk to such creditors, then a case has arisen for redress by the extraordinary writ of mandamus to enforce the board to make provision for payment. Board Police v. Grant, 9 S. & M., 90. This general proposition is subject, of course, to the qualification that the board can offer no valid excuse for declining to impose the tax.

The right of the relator must be " clear and specific," and there is no other adequate remedy at law of which he can avail. State Board Education v. West Point, 50 Miss., 642.

Is the right of the relator of that character? The answer throws doubt and suspicion on his title. So soon as a breach of contract resulted as alleged, in a failure of consideration, the board gave notice in two newspapers of the fact, and warned the public not to trade for the warrants. It is highly probable that the relator had notice of this action of the board. But that is not material in this connection. Then in four months after this publication, the board was garnished by Tod Hunter, who had an unsatisfied judgment or decree against Murphy. In that proceeding an issue was raised on the fact of whether or not the assignment of the warrant by Murphy to the relator was or not simulated and fraudulent. That issue is still pending and undecided. If that issue shall be found for Tod Hunter, then the further question will be pending whether the board ought to pay the warrant or any part of it, by reason of the breach by Murphy of his contract to keep the bridge in repair. If the respective parties who have claim to the warrant were before the court, then the ownership of the warrant could be settled conclusively.

Both in the answer to the garnishment and in their return in this case, the board present as reasons why the tax should not be levied: The breach of the bridge contract by Murphy and the damages resulting therefrom, and the insolvency of Murphy and his sureties, and the consequent loss of remedy upon the bond against them. In this view of it, the case takes this 'attitude: The board agreed with Murphy to pay for the bridge work in three equal annual installments. He entered into a covenant with sureties that the work should stand and be kept in order for five years. Before the last installment falls due, the bridge is partly washed away, requiring further outlay to replace it. On principle in ordinary contracts, the damages to the county might be secured or allowed in compensation as a credit in full or part payment of what would be due to Murphy. Myers *v.* Estell, 47 Miss., 5. The case falls within the doctrine of recoupment, because the respective claims arise out of the same transaction. But there is this feature which distinguishes this from ordinary

cases.    The relator is a creditor, holding a demand against the county, ascertained, definite, and fixed.    There is no occasion, therefore, that he should sue at law, if indeed he could maintain such a suit.    The merits of his claim must be assumed to have been canvassed and determined when it was allowed.    No opportunity then can be afforded by an ordinary action at law by the relator against the board, in which this defense could be made. The board might take the initiative and become the actor by a bill in chancery, seeking the surrender and satisfaction of the warrant because of the breach of contract and the insolvency of Murphy and his sureties, if the facts be true, as stated in the return, that relief would be afforded.    In no other mode could the respondent obtain full and adequate redress.    This reasoning conducts to the conclusion that these allegations disclose a right in the board to recoup the damages naturally arising from Murphy's breach of contract against the price it agreed to pay him for the work, and that justice may be administered, in a suit of chancery. If, then, the county ought not to pay this debt, but could be released from it in some other suit, does the relator present himself with such clear right in this proceeding as entitles him to the use of the taxing power ?    By moving for the peremptory writ, he admits that the works for which the county issued its warrants to Murphy have been swept away ; that he has not performed his covenants, that large damages have been sustained, and that his bond is insolvent and worthless as a security.    None of the defenses have been traversed or put in issue as allowed by the statute.    The failure of consideration arose before notice of transfer, and is available against the relator.    Code, § 2228.

The judgment is reversed, and judgment in this court for the plaintiff in error.